# SETTLEMENT AGREEMENT

This Settlement Agreement is made by Kenneth A. Dyer, Jr, Henry Kemp, Jr., and Kirk Sandy, individually and on behalf of all those similarly situated (hereinafter collectively as "Named Plaintiffs"), Joseph Allen, Robert Anderson, Edgar Bass, Curtis Black, Henry Bolton, Corey Bowers, LeCory Brown, Courtney Cain, Anthony Catanese, Ismael Santiago Charles, Hesley Charlton, Drew Morris, Amir Douglas, Roosevelt Duckett III, Roosevelt Duckett Jr., Dexter Emanuel, Carlos Figueroa Candelario, Juan G. Figueroa, Clifford Footman, Joshua Garland, Allen German, Jermine Hanks, Stephen Hartz, William Hendrix, James Hill, Michael Hill, Maurice Howard, Walter Jefferson, Julius Jones, Bruce Laster, Tavaren Latimer, Cedric Leeks, Linbell Lewis, Theo B. Lewis, Jentina Littles, Ybenson Loyer, Luis A. Maldonado, Jose Martinez, Willie McCarthy, Derrick McFadden, Ricky McGee, William McGee, Patrick Minor, Joan Saldana Morales, Wesley O'Neal, Leon Patrick, Bertram Pratt, Edward Proctor, Fred Randall, Charles Rhoden, Irving Richardson, Sultan Shakir, Roosevelt Shelby, Tyrone Sims, Ray Smith, Andrew Tomlin, Johnny Walters, Calvin Washington, Joseph Washington, Eddie Watts, Takari Weaver, Calvin Williams, Dean Williams, and James Williams (hereinafter collectively as "Opt-In Plaintiffs") (both the Named Plaintiffs and Opt-In Plaintiffs collectively referred to as "Plaintiffs"), and M&M Asphalt Maintenance, Inc. ("hereinafter "M&M"), All County Paving, Inc., Jeffrey Cohen, and Kenneth Goldberg (hereinafter collectively as "Defendants") (hereinafter Plaintiffs and Defendants collectively referred to as "Parties").

WHEREAS, Plaintiffs filed a lawsuit in the United States District Court, Middle District of Florida, Orlando Division, Case No.: 6:15-cv-959-Orl-37KRS, for alleged FLSA violations against Defendants ("Lawsuit"); and

WHEREAS, Defendants deny any wrongdoing and deny Plaintiffs' claims; and

WHEREAS, "Defendants" shall include M&M ASPAHLT MAINTENANCE, INC.'S incorporators; current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders, servants, agents, insurers, and any other person or entity acting with or on behalf of M&M as an employer in relation to Plaintiffs; ALL COUNTY PAVING, INC., ALL COUNTY PAVING, INC'S incorporators, current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders; servants; agents; insurers; and any other person or entity acting with or on behalf of All County Paving, Inc. as an employer in relation to Plaintiffs; JEFFREY COHEN, and KENNETH GOLDBERG; and

WHEREAS, Plaintiffs shall include their heirs, successors, administrators, agents, and assigns, any other parties of interest and/or representatives; and

WHEREAS, this Settlement Agreement is between Plaintiffs and Defendants, and is hereinafter referred to as the "Release," or the "Agreement."

NOW, THEREFORE, in consideration of the covenants contained herein, the payment from and on behalf of Defendants to Plaintiffs, and their heirs, successors, administrators, agents, assigns or attorneys, any other parties of interest and/or representatives, and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.      The foregoing recitals are true and correct.

2.      **Plaintiff's Release**.  Except for the Defendants' obligations contained herein, Plaintiffs do hereby irrevocably and unconditionally release, acquit, remise, and forever discharge Defendants and all included entities listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action for

overtime and minimum wages, liquidated damages, attorneys' fees, and costs, by Plaintiffs against Defendants, including but not limited to claims arising under or relating to:

      A.     The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq*.

      B.     Article X § 24, Florida Constitution, Florida Minimum Wage Amendment.

Plaintiffs further agree that it is the express intent of Plaintiffs to enter into this full and final settlement and compromise of any and all overtime and minimum claims, liquidated damages, and attorneys' fees and costs against Defendants that could or should have been brought in Case No.: 6:15-cv-959-Orl-37KRS.

Except for enforcement of this Agreement, if Plaintiffs should later initiate or participate in any legal action or proceeding against any Defendant, for any overtime or minimum wage claim arising or accruing before and through the effective date of this Agreement, which they should not, this Agreement will be conclusive evidence that any such claims have been released.

**Dismissal of Civil Action.**  Upon execution of this Agreement by all Parties, the Parties shall electronically file a Joint Motion for Approval of Settlement and Stipulation for Dismissal with Prejudice, which shall specify that each party shall bear its own attorney's fees and costs incurred in the Federal Civil Action, except as otherwise agreed herein by the Parties.  The Parties further agree to take any additional action as required by the Court to obtain full dismissal with prejudice of the Federal Civil Action.

For settlement purposes only, the Parties stipulate that the Opt-In Plaintiffs are similarly situated to the Named Plaintiffs under 29 U.S.C. Section 216(b) and further stipulate to final certification of the class.  In the event that this Agreement is not approved by the Court for any reason, this Agreement shall be terminated on the date the Court's order becomes final and non-appealable, and in addition: (1) the stipulation that the Opt-In Plaintiffs and Potential Opt-

In Plaintiffs are similarly situated to the Named Plaintiff under 29 U.S.C. Section 216(b), and the obligations and releases contained herein shall be null and void; (2) the stipulation of final certification of the class herein shall also be null and void; and (3) nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the litigation; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation.

3.     **Settlement Payment**. The Parties have agreed to settle all of Plaintiffs' overtime claims against Defendants, including, but not limited to, those asserted in the Lawsuit for alleged FLSA violations, for Seven Hundred and Sixty-Five Thousand Dollars and 00/100 ($765,000.00) (hereinafter as "Gross Settlement Payment"), which is allocated as follows:

A.     Check #1 in the amount of Two Hundred and Five Thousand Dollars and 00/100 ($205,000.00), in consideration of all alleged overtime wages, less applicable withholdings and deductions, shall be paid into a settlement fund account titled "The M&M Asphalt Maintenance, Inc. Settlement Fund" (hereinafter "Settlement Fund") that is administered by Simpluris Claims Administration as the claims administrator retained in this matter (hereinafter "Simpluris" or "Claims Administrator"). Check #1 shall be paid into the Settlement Fund within twenty days (20) of the Court's approval of this Agreement. Said monies will be issued from the Settlement Fund to the sixty-eight (68) Plaintiffs in the amounts specified on Exhibit "A" hereto in accordance with the terms set forth herein.

B.     Check #2 in the amount of Two Hundred and Five Thousand Dollars and 00/100 ($205,000.00), in consideration of liquidated damages, shall be paid into the Settlement Fund administered by Simpluris within twenty days (20) of the Court's approval of this Agreement. Said

monies will be issued from the Settlement Fund to the sixty-eight (68) Plaintiffs in the amounts specified on Exhibit "B" hereto in accordance with the terms set forth herein.

       C.     Check #3 in the amount of Twenty-Five Thousand Dollars and 00/100 ($25,000.00) as payment for Employer's share of FICA and FUTA taxes, and any other state or federal-specific statutory deductions on the portion of the Gross Settlement Payments designated as overtime wages, shall be paid into the Settlement Fund administrated by Simpluris within twenty days (20) of the Court's approval of this Agreement.  These funds shall be issued in accordance with the terms specified herein, and any portion of these funds remaining in the Settlement Fund after the Claims Administrator has disbursed all payments pursuant to this Agreement shall revert back to Defendants.  To the extent these funds are insufficient to pay the ordinary portion of employer's payroll taxes, Defendants shall be responsible for providing Simpluris with the minimum additional funds necessary to pay said unpaid taxes.  With the sole exception of the employer tax liability associated with the wage portion of the Gross Settlement Payment, Plaintiffs understand and agree that they shall be solely responsible for any and all tax consequences and/or liabilities arising from any payment they receive pursuant to this Agreement.  To this extent, Plaintiffs acknowledge and agree that they shall pay any and all taxes which may be determined to be due in connection with the Gross Settlement Payment with the exception of the employer tax liability.  Notwithstanding any provision herein, Defendants make no representation as to the tax consequences or liability arising from the payment described herein.

       D.     Service payments in the total amount of Ten Thousand Dollars and 00/100 ($10,000.00) shall be issued as 1099 monies and made payable to the following six (6) Plaintiffs in the amounts specified below within twenty days (20) of the Court's approval of this Agreement:

              Check #4:  $4,000.00 to Kenneth Dyer;
              Check #5:  $1,500.00 to Henry Kemp;

Check #6:  $1,500.00 to Kirk Sandy;

Check #7:  $1,000.00 to the Estate of Marquis Grooms;

Check #8:  $1,000.00 to Roosevelt Duckett III;

Check #9:  $1,000.00 to Roosevelt Duckett Jr.

The Parties agree that any reduction by the Court as to the amount of the requested service payments shall not be a basis for rendering the entire Settlement voidable or unenforceable. Checks #4 through #9 shall be delivered to LaBar & Adams, P.A. for distribution to each of the six (6) Plaintiffs.

E.      Check #10 shall be issued within twenty days (20) of the Court's approval of this Agreement directly to LaBar & Adams, P.A. in the amount of Three Hundred and Twenty Thousand Dollars and 00/100 ($320,000.00) in consideration of total attorneys' fees and costs (of this total amount, $280,663.24 is allocated as attorneys' fees and $39,336.76 is allocated as costs) incurred in pursuing this Lawsuit on behalf of the sixty-eight (68) Plaintiffs. This payment to Plaintiffs' counsel is for statutory attorneys' fees and costs under the FLSA. The Parties understand and agree that such payment to Plaintiffs' attorneys is in full and final satisfaction of any claim for attorneys' fees and costs. The Parties hereto agree that the fees and costs paid to LaBar & Adams, P.A were negotiated separately and without consideration to the amounts paid to the aforementioned Plaintiffs. Additionally, all claims administration costs and expenses - including those of the settlement claims administrator, Simpluris, disbursing settlement proceeds, and establishing a Settlement Fund - will be paid by Plaintiffs' counsel, LaBar & Adams, P.A., from the $320,000.00 attorneys' fees and costs payment.

5.      **Claims Administrator Responsibilities.**  The Claims Administrator shall be responsible for: (a) determining, finalizing, and mailing settlement checks to the Plaintiffs in the amounts specified above under Paragraphs 4(A)-(C), and exhibits thereto, subject to the required

tax withholdings and deductions, as applicable; (b) issuing lawful and appropriate pay stubs with the settlement checks to the Plaintiffs; (c) paying all employer payroll tax obligations in accordance with this Agreement; (d) issuing W-2 and 1099 IRS Forms, as applicable, for all amounts paid from the Settlement Fund in accordance with Paragraphs 4(A)-(C) above; (e) responding to inquiries of Defendants' or Plaintiffs' attorneys; (f) providing reports regarding the distribution of the settlement checks and/or other aspect of the administration process to the Defendants' attorney and/or Plaintiffs' attorney, upon request; (g) confirming in writing to Defendants' attorneys and Plaintiffs' attorneys upon the completion of settlement administration; and (h) such other tasks as are called for by this Agreement.

In addition to the above, the Claims Administrator shall obtain and maintain copies of the front and back of each settlement check issued to any Plaintiff under this Agreement that is deposited, cashed, or otherwise negotiated by Plaintiff. Upon request by Defendants' attorney, the Claims Administrator shall provide Defendants' attorney with copies of the front and back of these settlement checks. After ninety (90) days have elapsed from the date on which the Claims Administrator issues settlement checks to the Plaintiffs, the Claims Administrator shall take all steps necessary to cancel, void, and stop payment on any settlement checks that have not been deposited, cashed, or otherwise negotiated, and the Claims Administrator shall notify both Defendants' counsel and Plaintiffs' counsel of all settlement checks that have not been deposited, cashed, or otherwise negotiated during this ninety (90) day period. The Defendants shall provide the Claims Administrator with the full social security number of each class member and any other reasonable information needed and requested by the Claims Administrator to ensure that all class members can be located.

Within six (6) months after the date the Court approves this Agreement, the Claims Administrator will notify Defendants' attorney, in writing, of the total amount of funds

remaining in the Settlement Fund including, but not limited to: (1) funds remaining because Plaintiffs failed to deposit, cash, or otherwise negotiate their settlement checks issued pursuant to this Agreement; (2) funds remaining from the portion of the Gross Settlement Payment allocated as payment for Employer's share of FICA, FUTA, and any other state or federal-specific requirements on the payment of the Gross Settlement Payment designated as overtime wages; and (3) funds remaining for any other reason. At that time, the Claims Administrator shall also provide Defendants' attorney with the name of the payee and amount of each check that the Claims Administrator cancelled, voided, or stopped payment on.

As it relates to the portion of the Gross Settlement Payment allocated to paying the employer's payroll taxes as specified in Paragraph 4(C), any and all of said funds remaining in the Settlement Fund after the Claims Administrator disburses all payments pursuant to Paragraphs 4(A) and 4(B) of this Agreement shall revert to Defendants. The Claims Administrator shall issue payment to Defendants in the amount of such remaining funds and shall take the necessary steps to close the Settlement Fund by no later than six (6) months after the date the Court approves this Agreement.

6.      **Creation and Implementation of a Qualified Settlement Fund**

A.      Establishing the Qualified Settlement Fund. The Claims Administrator will create and deposit the Gross Settlement Payment into the Settlement Fund, which the Parties intend to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. The Claims Administrator shall establish the Settlement Fund as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Claims Administrator, subject to the ultimate authority of the Court.

B.    Administering the Settlement Fund.  The Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments.  The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.  The Parties agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

C.    Tax Withholding and Reporting.

a.    Employment Taxes.

i.    The Parties recognize that the overtime pay to Plaintiffs will be subject to applicable tax withholding and reporting.  The Claims Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employer's share of payroll taxes from the portion of the payment to each Plaintiff attributable to wages.  Subject to the Claims Administrator's obligation to comply with applicable laws, the Parties agree that any amounts designated as liquidated damages or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099.

ii.    The Claims Administrator shall pay the employer's share of payroll taxes for the portion of the payments to Plaintiffs that are designated as W-2 wages.  The Claims Administrator shall pay the employer's share of payroll taxes using only the undisbursed monies from the portion of the Gross Settlement Payment allocated specifically to pay employer's share of said payroll taxes, as provided for in Paragraph 4(C).  In the event these monies are insufficient to satisfy the employer payroll tax obligations, the Claims Administrator

shall notify Defendants, in writing, of the shortfall, and, within thirty (30) calendar days after receiving such notification, Defendants shall issue a payment to the Claims Administrator in that amount. The Claims Administrator shall pay the outstanding employer payroll taxes. Other than this payment and the Gross Settlement Payment, Defendants shall not be liable for any other payments, costs or expenses associated with the subject litigation or this settlement.

        b.     <u>Fund Taxes</u>. The Claims Administrator shall pay all Settlement Fund Taxes, if any, from the Settlement Fund. "Settlement Fund Taxes" means all taxes (including any estimated taxes, interest, and penalties) arising from the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on the Settlement Fund with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes. The Parties agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to minimize Settlement Fund Taxes.

        D.     <u>Other Payments and Indemnification</u>. The Claims Administrator shall be responsible for satisfying all federal, state, local and other reporting requirements. The Claims Administrator shall indemnify and hold harmless the Parties for any cost, charge, expense, penalty or interest resulting from any mistakes or negligence of the Claims Administrator including, but not limited to, incorrect calculations or late deposits or payments.

        E.     <u>Communication with Defense Counsel and Plaintiffs' Attorneys</u>. Defense attorneys and Plaintiffs' attorneys are authorized to communicate directly with the Claims Administrator to expedite the settlement administration process.

        7.     **Not an Admission of Liability.** It is understood, agreed and stipulated between the Parties that the consideration described herein is in complete and full accord, satisfaction and

discharge of disputed overtime claims, and that Defendants do not in any manner by virtue of this Agreement, or payment of the consideration therefore, admit liability to anyone as a result of any incident, act, or omission described in or cognizable by the aforementioned claims, charges or causes of action. It is recognized that Defendants have denied and continue to deny all such allegations, and the Defendants maintain that the Plaintiffs were properly paid for all time worked. The Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity.

8.    **Complete Agreement.**    This Agreement contains the entire agreement, understanding, and stipulation between the Parties hereto with respect to the subject matter addressed herein, and it shall supersede all prior and contemporaneous negotiations and agreements between the Parties regarding the subject matter addressed herein. The Parties to this Agreement acknowledge that they have had full possession of any and all facts with regard to their claims or rights, and that they have had ample opportunity to consult with an attorney, any governmental agency of their choosing and/or such other advisors as they have deemed appropriate to be fully advised of the rights and obligations incurred or waived hereby. The terms of this Agreement are contractual, not mere recitals, and may be enforced in Court.

9.    Each Party warrants to each other that each has full power, authority and capacity to execute this Agreement. The Parties represent to each other that the effect of this Agreement has been fully explained to each of them and the Agreement is understood and agreed to by them. Plaintiffs warrant and represent that they are the owners of the claims asserted in this Lawsuit and have not transferred or assigned them, except as represented in this Agreement.

10.    This Agreement is deemed to have been drafted jointly by the Parties. Any uncertainty or ambiguity shall not be construed for or against any other party based on attribution

of drafting to any party.  The terms of this Agreement are executed without reliance upon any representations except those contained herein, and the parties have carefully read this Settlement Agreement and sign the same of their own free will.

11.     Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement, and the remaining portions of this Agreement will remain in full force and effect to the extent the effect of the Agreement and the obligations of the Parties remain materially the same.

12.     This Agreement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of the State of Florida.  The Parties shall request the Court retain jurisdiction to enforce this Agreement.  This Agreement shall be enforced by the United States District Court, Middle District of Florida, Orlando Division, or the State Court in Orange County, Florida, if the United States District Court declines to retain jurisdiction for enforcement.   All parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties herein.

13.     Should any party to this Agreement be required to enforce the terms of this agreement against a breaching party, upon a proven breach, the prevailing party shall be entitled to its reasonable attorneys' fees and costs.

14.     This Agreement is binding on all sixty-eight (68) Plaintiffs in the subject Lawsuit Case No.: 6:15-cv-959-Orl-37KRS, and the Named Plaintiffs represent that they are fully authorized to enter into this Settlement Agreement on behalf of all sixty-eight (68) Plaintiffs and bind all sixty-eight (68) Plaintiffs to the terms and conditions herein.  This representation by the

Named Plaintiffs is a material term to this Agreement and is materially relied upon by Defendants in entering into this Agreement.

15.     The Parties understand and agree that by Defendants entering into this Agreement, they are not waiving any defenses as it relates to any non-class member or to any putative class member who has not timely joined this Lawsuit, including but not limited to defenses based on the statute of limitations.

16.     The Named Plaintiffs, as Representative Plaintiffs, agree they have entered into the settlement knowingly and voluntarily and after having the opportunity to fully discuss the issues with counsel.

17.     This agreement may be signed in counterparts, fax copies to be considered original.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below.

M&M ASPHALT MAINTENANCE, INC.          ALL COUNTY PAVING, INC.
D/B/A ALL COUNTY PAVING

By: _Jeffrey Cohen_                    By: _Jeffrey Cohen_

Title: _VP/Sec_                        Title: _Sec_

Date: _12-6-16_                        Date: _12-6-16_


JEFFREY COHEN                          KENNETH GOLDBERG

Date: _12-6-16_                        Date: _12-6-16_

Date: _____.            Date: _____


_____
KENNETH DYER

Date: 12 - 1 - 16


_____            _____
HENRY L. KEMP, JR.                          KIRK SANDY

Date: 12-2-16                              Date: 12-1 -16

**Exhibit A**

| | |
|---|---|
| Allen, Joseph | $7,304.34 |
| Anderson, Robert | $3,151.48 |
| Bass, Edgar | $2,938.34 |
| Black, Curtis | $1,968.53 |
| Bolton, Henry | $607.94 |
| Bowers, Corey | $4,444.33 |
| Brown, LeCory | $4,812.80 |
| Cain, Courtney | $658.59 |
| Catanese, Anthony T. | $3,295.61 |
| Charles, Ismael Santiago | $693.89 |
| Charlton, Hesley | $2,635.16 |
| Drew, Morris | $2,356.44 |
| Douglas, Amir | $2,043.19 |
| Duckett, Roosevelt III | $5,420.73 |
| Duckett, Roosevelt Jr | $3,042.33 |
| Dyer, Kenneth | $6,481.32 |
| Emanuel, Dexter | $2,947.58 |
| Figueroa, Carlos Candelario | $4,752.97 |
| Figueroa, Juan G. | $2,634.38 |
| Footman, Clifford | $3,380.12 |
| Garland, Joshua | $3,149.70 |
| German, Allen | $3,389.58 |
| Grooms, Marquis | $6,760.72 |
| Hanks, Jermine | $1,994.74 |
| Hartz, Stephen | $553.23 |
| Hendrix, William | $202.65 |
| Hill, James | $5,560.74 |
| Hill, Michael | $5,298.00 |
| Howard, Maurice | $4,901.37 |
| Jefferson, Walter | $6,980.96 |
| Jones, Julius | $1,741.23 |
| Kemp, Henry | $5,674.04 |
| Laster, Bruce | $3,428.65 |
| Latimer, Tavaren | $2,460.71 |
| Leeks, Cedric | $3,481.18 |
| Lewis, Linbell | $1,657.72 |

| | |
|---|---|
| Lewis, Theo B. | $1,965.87 |
| Littles, Jentina | $543.10 |
| Loyer, Ybenson | $759.92 |
| Maldonado, Luis A. | $3,271.64 |
| Martinez, Jose | $3,025.49 |
| McCarthy, Willie | $3,949.06 |
| McFadden, Derrick | $3,528.09 |
| McGee, Ricky | $4,135.70 |
| McGee, William | $3,953.30 |
| Minor, Patrick | $5,061.60 |
| Morales, Juan Saldana | $2,620.21 |
| O'Neal, Wesley | $2,390.98 |
| Patrick, Leon | $2,756.92 |
| Pratt, Bertram | $1,162.67 |
| Proctor, Edward | $1,905.28 |
| Randall, Fred | $1,957.36 |
| Rhoden, Charles | $2,128.86 |
| Richardson, Irving | $1,694.13 |
| Sandy, Kirk | $1,702.21 |
| Shakir, Sultan | $1,100.37 |
| Shelby, Roosevelt | $1,046.02 |
| Sims, Tyrone | $1,795.32 |
| Smith, Ray | $2,263.12 |
| Tomlin, Andrew | $6,995.71 |
| Walters, Johnny | $2,777.71 |
| Washington, Calvin | $735.61 |
| Washington, Joseph | $1,560.57 |
| Watts, Eddie | $4,017.85 |
| Weaver, Takari | $3,345.74 |
| Williams, Calvin | $2,361.05 |
| Williams, Dean | $2,582.96 |
| Williams, James | $3,100.46 |

### Exhibit B

| | |
|---|---|
| Allen, Joseph | $7,304.34 |
| Anderson, Robert | $3,151.48 |
| Bass, Edgar | $2,938.34 |
| Black, Curtis | $1,968.53 |
| Bolton, Henry | $607.94 |
| Bowers, Corey | $4,444.33 |
| Brown, LeCory | $4,812.80 |
| Cain, Courtney | $658.59 |
| Catanese, Anthony T. | $3,295.61 |
| Charles, Ismael Santiago | $693.89 |
| Charlton, Hesley | $2,635.16 |
| Drew, Morris | $2,356.44 |
| Douglas, Amir | $2,043.19 |
| Duckett, Roosevelt III | $5,420.73 |
| Duckett, Roosevelt Jr | $3,042.33 |
| Dyer, Kenneth | $6,481.32 |
| Emanuel, Dexter | $2,947.58 |
| Figueroa, Carlos Candelario | $4,752.97 |
| Figueroa, Juan G. | $2,634.38 |
| Footman, Clifford | $3,380.12 |
| Garland, Joshua | $3,149.70 |
| German, Allen | $3,389.58 |
| Grooms, Marquis | $6,760.72 |
| Hanks, Jermine | $1,994.74 |
| Hartz, Stephen | $553.23 |
| Hendrix, William | $202.65 |
| Hill, James | $5,560.74 |
| Hill, Michael | $5,298.00 |
| Howard, Maurice | $4,901.37 |
| Jefferson, Walter | $6,980.96 |
| Jones, Julius | $1,741.23 |
| Kemp, Henry | $5,674.04 |
| Laster, Bruce | $3,428.65 |
| Latimer, Tavaren | $2,460.71 |
| Leeks, Cedric | $3,481.18 |
| Lewis, Linbell | $1,657.72 |

| | |
|---|---|
| Lewis, Theo B. | $1,965.87 |
| Littles, Jentina | $543.10 |
| Loyer, Ybenson | $759.92 |
| Maldonado, Luis A. | $3,271.64 |
| Martinez, Jose | $3,025.49 |
| McCarthy, Willie | $3,949.06 |
| McFadden, Derrick | $3,528.09 |
| McGee, Ricky | $4,135.70 |
| McGee, William | $3,953.30 |
| Minor, Patrick | $5,061.60 |
| Morales, Juan Saldana | $2,620.21 |
| O'Neal, Wesley | $2,390.98 |
| Patrick, Leon | $2,756.92 |
| Pratt, Bertram | $1,162.67 |
| Proctor, Edward | $1,905.28 |
| Randall, Fred | $1,957.36 |
| Rhoden, Charles | $2,128.86 |
| Richardson, Irving | $1,694.13 |
| Sandy, Kirk | $1,702.21 |
| Shakir, Sultan | $1,100.37 |
| Shelby, Roosevelt | $1,046.02 |
| Sims, Tyrone | $1,795.32 |
| Smith, Ray | $2,263.12 |
| Tomlin, Andrew | $6,995.71 |
| Walters, Johnny | $2,777.71 |
| Washington, Calvin | $735.61 |
| Washington, Joseph | $1,560.57 |
| Watts, Eddie | $4,017.85 |
| Weaver, Takari | $3,345.74 |
| Williams, Calvin | $2,361.05 |
| Williams, Dean | $2,582.96 |
| Williams, James | $3,100.46 |