# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KENNETH A. DYER, JR., HENRY L.
KEMP, JR., KIRK SANDY and THE
ESTATE OF MARQUIS GROOMS,

                 **Plaintiffs,**

v.                                        **Case No:  6:15-cv-959-Orl-37KRS**

M & M ASPHALT MAINTENANCE
INC., ALL COUNTY PAVING, INC.,
JEFFREY COHEN, KENNETH
GOLDBERG and DAVID GOLDBERG,

                 **Defendants.**

_____

## AMENDED REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT (Doc. No. 215)** |
| **FILED:** | **December 6, 2016** |

      Defendants objected to portions of my initial Report and Recommendation addressing this motion.  Doc. No. 219.  The presiding District Judge remanded the motion to me for consideration of the objections and the new evidence filed in support of the objections. Doc. No. 221. Accordingly, I issue this Amended Report and Recommendation based on review of the objections and new evidence.

# I.     BACKGROUND.

On June 12, 2015, Plaintiffs Kenneth A. Dyer, Jr., Henry L. Kemp, Jr., Marquis D. Grooms and Kirk Sandy filed a complaint alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant, M&M Asphalt Maintenance, Inc. ("M&M").   Doc. No. 1.   Plaintiffs alleged that the complaint was brought on behalf of themselves and other laborers and drivers similarly situated to them.   *Id.* at 8-9.   The plaintiffs named in the complaint and a number of individuals ("Opt-In Plaintiffs") filed consents to join the case, as reflected in the chart attached to this Report and Recommendation.[1]

On August 20, 2015, Plaintiffs Dyer, Kemp, Grooms and Sandy along with five Opt-In Plaintiffs filed an amended complaint, naming M&M, All County Paving, Inc. ("All County"), Jeffrey Cohen, Kenneth Goldberg, and David Goldberg as Defendants.   Doc. No. 32.   In the amended complaint, Plaintiffs[2] again alleged violations of the FLSA overtime provisions by each of the Defendants and, again, sought to represent other laborers and drivers similarly situated to them.   On November 18, 2016, the parties filed a stipulation of dismissal with prejudice as to Defendant David Goldberg.   Doc. No. 211.

On July 5, 2016, the Court conditionally certified a collective class of Laborers and Drivers who worked at Defendants' Orlando, Lake Worth, or Delray Beach offices.   Doc. No. 165, at 13-14.   The Court authorized delivery of notices and consent-to-join forms to potential members of

---

[1] Kendall Jackson also filed a consent to join the case.   Doc. No. 189-1.   On October 18, 2016, counsel for the parties filed a Stipulation of Dismissal Without Prejudice, dismissing Jackson from this collective action.   Doc. No. 209.

[2] References to Plaintiffs herein include, collectively, the Plaintiffs in the original complaint and Opt-In Plaintiffs.

the collective action. *Id.* at 10-11. The Court appointed Dyer, Kemp and Sandy (the "Named Plaintiffs") as class representatives. *Id.* at 14.[3]

On November 21, 2016, the parties filed a notice of settlement. Doc. No. 213. Thereafter, they filed the above-referenced motion supported by a copy of the Settlement Agreement signed by Defendants and by the Named Plaintiffs (Doc. No. 215-1).[4] In response to an order from the Court, counsel for the parties filed a supplemental memorandum (Doc. No. 217) and a letter sent by counsel for Plaintiffs to Opt-In Plaintiffs who had not been personally advised about the terms of the settlement explaining the terms of the settlement (Doc. No. 217-1). The letter advised each Opt-In Plaintiff that objections to the settlement should be addressed to counsel for Plaintiffs. Doc. No. 217-1, at 3. In the unverified supplemental memorandum, counsel for Plaintiffs stated: "[C]lass counsel maintain that it has not received any objections to the terms of the settlement." Doc. No. 217, at 7.

Counsel have now submitted evidence in support of their assertion that each Plaintiff and Opt-In Plaintiff has been advised about the terms of the settlement and does not object to the settlement. Scott C. Adams, Esq., one of the attorneys for Plaintiffs, submitted a declaration in which he attests as follows:

> 18.    I have specifically reviewed and advised Kenneth Dyer, Henry Kemp, Kirk Sandy, Michael Hill, Robert Anderson, Joseph Allen, Corey Bowers, Calvin Williams, Tavaren Latimer, Ricky McGee, Patrick Minor, Andrew Tomlin, Johnny Walters, Jentina Littles, Luis Maldonado, William McGee, Maurice Howard, Carlos Candelario Figueroa, Curtis Black, Linbell Lewis, Nieda White (Representative of the Estate of Mr. Grooms), Edward Proctor, Derrick McFadden, Dexter Emanuel,

---

[3] Grooms was also named a class representative. Doc. No. 165, at 14. Grooms died on January 20, 2016, and Niega White was appointed as his personal representative. Doc. No. 208-1. The Court terminated Grooms as a class representative and added the Estate of Marquis Grooms as a party. Doc. No. 210.

[4] I note that the Estate of Marquis Grooms is not included in the list of Opt-In Plaintiffs in the first paragraph of the Settlement Agreement. Doc. No. 215-1, at 1. However, Marquis Grooms is included in Exhibits A and B to the Settlement Agreement. *Id.*, at 15, 17.

Amir Douglas, Josh Garland, Bruce Laster, Dean Williams, and William Hendrix of the terms of the settlement in this matter.

19.     A correspondence was also sent to class members advising them of the settlement and its terms. The correspondence was sent to those class members that I had not had a chance to discuss the settlement terms with as of the date of the correspondence.   Attached as exhibit "A" is a true and accurate copy of the correspondence sent to class members.[5]

20.     The purpose of this correspondence was to advise the class members of the settlement, the terms of the settlement, and to allow them to voice any concerns they may have regarding the settlement.

21.     Our office has not received any objections to the settlement, the terms of the settlement, or the amount of money they will be receiving from the settlement.

Doc. No. 219-2, at 3-4.

---

[5] Counsel did not enclose a copy of the Settlement Agreement with the letter, but stated that he would send it to any Plaintiff on request.   Doc. No. 219-2, at 9.   The summary of the settlement set forth in the letter is as follows:

> Under the terms of the settlement, the Defendants have agreed to pay $410,000.00 in unpaid wages and liquidated damages and all employers' taxes for the wages paid which is currently estimated at $25,000.00. Each Opt-In Plaintiff that is receiving this letter will receive the total amount as outlined on the attached chart. One-half of the sum allocated to each Opt-In Plaintiff will be paid as a wage with the normal employee taxes being withheld and a W-2 being issued to the Opt-In Plaintiff. One-half of the sum allocated to each Opt-In Plaintiff will be paid as a liquidated damage without taxes being withheld and a 1099-Misc. being issued to the Opt-In Plaintiff. These payments will be made by the Claims Administrator to each Class Representative and Opt-In Plaintiff.

> Also, pursuant to the settlement agreement, the Defendants have agreed to pay $10,000.00 in service payments to those Plaintiffs that substantially contributed to the Class during this litigation. The Defendants have agreed to make the following service payments: (1) Kenneth A. Dyer-$4,000.00; (2) Henry Kemp-$1,500.00; (3) Kirk Sandy-$1,500.00; (4) the Estate of Marquis Grooms-$1,000.00; (5) Roosevelt Duckett III-$1,000.00; and (6) Roosevelt Duckett, Jr.-$1,000.00.

> Finally, the Defendants have agreed to pay the Classes' attorney's fees and costs. Pursuant to the settlement agreement, the Defendants have agreed to pay Class Counsel $280,663.24 in attorney fees and $39,336.76 in litigation costs.

> In exchange for the foregoing payments, the Class Representatives and Opt-[In] Plaintiffs will release the Defendants from overtime wage claims and/or minimum wage claims only. Thus, each Class Representative and Opt-In Plaintiff will still retain the right to sue the Defendants for any and all other claims other than claims for unpaid overtime or minimum wages.

*Id.* at 8-9 (internal footnotes omitted).

The parties ask that the Court find that the settlement agreement is a fair and reasonable resolution of a bona fide dispute under the FLSA and dismiss the case with prejudice.

## II.     APPLICABLE LAW.

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* at 1353. Under *Lynn's Food*, a court may only enter an order approving a settlement if it finds that the settlement is fair and reasonable, *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240 (M.D. Fla. 2010), and that the ensuing judgment is stipulated, *Nall v. Mal Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013).

When a settlement agreement includes an amount to be used to pay attorney's fees and costs, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (unpublished decision cited as persuasive authority). If the Court finds that the payment to the attorney is not reasonable, the Court must consider whether a plaintiff's recovery might have been greater if the parties had reduced the attorney's fees to a reasonable amount. *See id.* at 351-52; *see also Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (finding that the court must consider the reasonableness of attorney's fees when "a settlement does not appear reasonable on its face or there is reason to believe that that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney").

## III.    ANALYSIS.

### A.    *Proposed Settlement Amounts to be Paid to Plaintiffs.*

The Plaintiffs alleged that they were owed overtime compensation for certain "drive time" and for meal periods being automatically and improperly deducted from their compensation and an equal amount in liquidated damages.  *See, e.g.*, Doc. No. 215, at 5.  As shown in the chart attached to this Report and Recommendation, under the Settlement Agreement the Plaintiffs who answered the Court's interrogatories have compromised their claims, and counsel for Plaintiffs represents that all of the Plaintiffs compromised their claims.  Doc. No. 215, at 8 (explaining the computation of the settlement sums).  Counsel for the parties explain the reason for the compromise as follows: (1) after review of Defendants' records, Plaintiffs did not work more than 40 hours in some work weeks and some Plaintiffs were paid for their meal times; (2) Plaintiffs' estimates of travel time may have been overstated; and, (3) evidence was discovered that supported the Defendants' defense to liquidated damages.  Doc. No. 215, at 5-6.  I recommend that the Court find that this adequately explains the reason for the compromise.

### B.    *Terms of the Settlement Agreement.*

The Court must next consider whether there are terms in the Settlement Agreement that undermine the fairness of the agreement.  *See generally Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 U.S. Dist. LEXIS 33929, at *17 (M.D. Fla. Mar. 14, 2012).  I will discuss problematic issues below.

#### 1.    Definitions of Released Defendants.

First, the parties define the "Defendants" to be released as follows:

WHEREAS, "Defendants" shall include M&M ASPHALT MAINTENANCE, INC.'S incorporators; current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders, servants, agents, insurers, *and*

> *any other person or entity acting with or on behalf of M&M as an employer in relation to Plaintiffs*; ALL COUNTY PAVING, INC., ALL COUNTY PAVING, INC'S incorporators, current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders; servants; agents; insurers; *and any other person or entity acting with or on behalf of All County Paving, Inc. as an employer in relation to Plaintiffs*; JEFFREY COHEN, and KENNETH GOLDBERG; . . .

Doc. No. 215-1, at 2 (emphasis added). Although the plain language of this release includes individuals and entities not named as Defendants in this case, counsel for both parties aver in newly submitted declarations that they intended the above-italicized language to limit the release to only individuals and entities who acted as joint employers of Plaintiffs. Adams Decl., Doc. No. 219-2, at 4 ¶ 23; Beige Decl., Doc. No. 219-1, at 2 ¶ 8. In the alternative, counsel ask that the Court sever the portion of the definition of released Defendants that it determines to be overbroad based on the modification provision of the Settlement Agreement (Doc. No. 215-1, at 12 ¶ 11). Doc. No. 219, at 5.

I recommend that the Court sever and revise portions of definition of released Defendants, as follows, to make clear counsel's stated intent for the scope of the release:

> WHEREAS, "Defendants" shall include M&M ASPHALT MAINTENANCE, INC. and any other person or entity acting with or on behalf of M&M as [a joint] employer in relation to Plaintiffs; ALL COUNTY PAVING, INC and any other person or entity acting with or on behalf of All County Paving, Inc. as [a joint] employer in relation to Plaintiffs; JEFFREY COHEN, and KENNETH GOLDBERG; . . . [6]

---

[6] Redlined definition as follows:

WHEREAS, "Defendants" shall include M&M ASPHALT MAINTENANCE, INC.~~'S incorporators; current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders, servants, agents, insurers,~~ and any other person or entity acting with or on behalf of M&M as [a joint] employer in relation to Plaintiffs; ALL COUNTY PAVING, INC~~, ALL COUNTY PAVING, INC'S incorporators, current and former Board of Directors and their heirs, successors in interest, assigns, administrators, agents, and any other parties of interest and/or representatives; officers; owners; shareholders; servants; agents; insurers;~~ and any other person or entity acting with or on behalf of All County Paving, Inc. as [a

2.    <u>Scope of the Release</u>.

Under the Settlement Agreement, Plaintiffs' release reads as follows:

> Except for the Defendants' obligations contained herein, Plaintiffs do hereby irrevocably and unconditionally release, acquit, remise, and forever discharge Defendants and all included entities listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action for overtime and minimum wages, liquidated damages, attorneys' fees, and costs, by Plaintiffs against Defendants, including but not limited to claims arising under or relating to:
>
> A.    The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq.*
>
> B.    Article X § 24, Florida Constitution, Florida Minimum Wage Amendment.
>
> Plaintiffs further agree that it is the express intent of Plaintiffs to enter into this full and final settlement and compromise of any and all overtime and minimum [wage] claims, liquidated damages, and attorneys' fees and costs against Defendants that could or should have been brought in Case No.: 6:15-cv-959-Orl-37KRS.

Doc. No. 215-1, at 2-3.

The Amended Complaint asserted only one claim for failure to pay overtime compensation in violation of the FLSA.   Doc. No. 32, at 17-20.   The release also includes release of minimum wage claims that were not asserted in this case.   While some Judges have found similar releases to be overbroad if they are not limited to only the claims asserted in the FLSA case, other Judges have found that releases limited to wage claims generally are reasonable.   *Compare Colon v. Garda CL Se., Inc.*, No. 6:14-cv-1777-Orl-37KRS, 2015 U.S. Dist. LEXIS 94775, at *3 n.1 (M.D. Fla. July 21, 2015) (finding unreasonable release of wage claims under the Florida Minimum Wage Act and the Florida Constitution when complaint raised only overtime compensation claim under the FLSA)

---

joint] employer in relation to Plaintiffs; JEFFREY COHEN, and KENNETH GOLDBERG; . . .

with *Cooper v. Garda CL Se., Inc.*, No. 15-cv-1677-Orl-40KRS, 2015 WL 9244682, at *1 (M.D. Fla. Dec. 18, 2015) (finding reasonable a release of all claims existing prior to the execution of the settlement agreement that related to the payment of wages and/or overtime for all hours worked, including, but not limited to, claims arising under the FLSA, the Florida Constitution and the Florida Minimum Wage Act).

If the Court believes the release is overly broad, I recommend that the Court sever the portion of the release pertaining to minimum wage claims, as follows:

> Except for the Defendants' obligations contained herein, Plaintiffs do hereby irrevocably and unconditionally release, acquit, remise, and forever discharge Defendants and all included entities listed above from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action for overtime ~~and minimum~~ wages, liquidated damages, attorneys' fees, and costs, by Plaintiffs against Defendants, ~~including but not limited to claims~~ arising under ~~or relating to~~:
>
> > A.    The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq.*
> >
> > ~~B.    Article X § 24, Florida Constitution, Florida Minimum Wage Amendment.~~
>
> Plaintiffs further agree that it is the express intent of Plaintiffs to enter into this full and final settlement and compromise of any and all overtime ~~and minimum~~ [wage] claims, liquidated damages, and attorneys' fees and costs against Defendants that could or should have been brought in Case No.: 6:15-cv-959-Orl-37KRS.

Because counsel represent that the Plaintiffs do not have minimum wage claims, Doc. No. 215, at 11 n. 13, modifying the release in this manner should not undermine an essential term of the Settlement Agreement.

If, however, the Court finds that the release is appropriately limited to wage claims as written, then the Court may conclude that the release does not undermine the reasonableness of the settlement.

3.    <u>Consent to the Settlement Agreement.</u>

The Settlement Agreement is signed on behalf of all Plaintiffs only by Plaintiff Dyer, Plaintiff Kemp and Plaintiff Sandy.   Doc. No. 215-1, at 14.   In some of the consent-to-join forms, Opt-In Plaintiffs designated these class representatives "as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of any agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit."   *See, e.g.,* Doc. No. 184-1, at 1.   However, in other consent-to-join forms, the Opt-In Plaintiffs did not authorize the class representatives to make decisions regarding the litigation on his or her behalf.   *See, e.g.,* Doc. No. 18-1.[7]

Assuming for purposes of this analysis only that the Court intended to give the class representatives authority to enter into a settlement agreement on behalf of each member of the collective action, there must be some mechanism for the Court to ensure that each member of the collective action has been appropriately notified of the terms of the Settlement Agreement and agrees to those terms.   So, for example, in *Fernandez v. Harvard Maintenance, Inc.*, No. 2:11-cv-509-FtM-36SPC, 2011 WL 6934123, at \*3-4 (M.D. Fla. Dec. 14, 2011), *report and recommendation adopted, id.*, 2011 WL 6934134 (M.D. Fla. Dec 30, 2011), the Court adopted the

---

[7]  Contrary to counsel's arguments, *Cameron-Grant v. Maxim Healthcare Services*, 347 F.3d 1240, 1249 (11th Cir. 2003), does not stand for the proposition that filing a consent to join an FLSA collective action binds an opt-in Plaintiff to a settlement or judgment to which he did not agree.   The language counsel cites is dicta, because the Court held in *Cameron-Grant* that the action was moot because the named plaintiffs dismissed or settled their claims.   In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001), the Eleventh Circuit stated that a plaintiff could not be bound by the outcome of an FLSA collective action unless he consented to join the case.   *Hipp* does not state that an opt-in plaintiff is bound to a settlement agreement negotiated by named plaintiffs to which the opt-in plaintiff did not agree.   In *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), also cited by counsel, the Eleventh Circuit stated that after being given notice of a collective action and filing a consent to join the action, the collective action "proceeds *throughout discovery* as a representative action for those who opt-in." *Id.* at 1259 (emphasis added).   The court did not hold that an opt-in plaintiff is bound to a settlement negotiated by named plaintiffs to which the opt-in plaintiff did not agree.

recommendation that a Court-ordered notice of the settlement be sent to members of the collective action to determine if any of the opt-in plaintiffs objected to the settlement.

In this case, counsel for Plaintiff attests that he spoke with some Plaintiffs and mailed a letter to Plaintiffs he had not spoken to advising them of the essential terms of the settlement. Counsel for Plaintiff avers that no Plaintiff objected to the settlement. If the Court finds that this form of notice by counsel for Plaintiffs is sufficient to give each Plaintiff notice of the settlement and an adequate opportunity to object, then at least one court has determined that the settlement may be approved based on notice of the settlement provided to members of the collective action by counsel. *See Moore v. Ackerman Inv. Co.*, No. C 07-3058-MWB, 2009 WL 2848858, at *3 (N.D. Iowa Sept. 1, 2009). If the Court has concerns about the adequacy of notice to each Plaintiff in this case, however, it may require Court-ordered notice of the settlement to be provided to each Plaintiff. *See, e.g., Goldsby v. Renosol Seating, LLC*, No. 2:08-0148-KD-N, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013).

C.       *Attorneys' Fees and Costs*.

Under the Settlement Agreement, counsel for Plaintiffs will receive $320,000.00 in attorneys' fees and costs, $280,663.24 of which is allocated to fees and $39,336.76 to costs. Plaintiffs have presented no evidence of the actual costs incurred, the time worked and tasks performed or the reasonable hourly rates of the professionals performing the work.[8]

In newly filed evidence, counsel for the parties attest that they negotiated the attorneys' fees and costs separate from, and without consideration of, the amount to be paid to the class. Adams Decl., Doc. No. 219-2, at 4 ¶¶ 25-26; Beige Decl., Doc. No. 219-1, at 2 ¶¶ 11-12. The complaint

---

[8] Plaintiffs' counsel will pay the costs of claims administration from the attorneys' fees and costs to be paid under the Settlement Agreement. Doc. No. 215-1, at 6.

in this case was filed on June 12, 2015, Doc. No. 1, and the Court was first advised that the case had been settled on November 21, 2016, Doc. No. 213. While the amount of attorneys' fees incurred is very high in my experience with litigation of FLSA cases[9], Judges of this Court have approved attorneys' fees negotiated by counsel separate and without consideration of the amount being paid to plaintiffs. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *Terry v. Newport Television, LLC*, No. 6:13-cv-1031-ORl-37TBS, 2014 WL 12625977, at *2 (M.D. Fla. Aug. 20, 2014)(recommending approval of $35,000 fee in an FLSA case that was not typical), *reported and recommendation adopted*, *id.*, 2014 WL 12629937 (M.D. Fla. Sept. 15, 2014). Accordingly, if the Court finds the *Bonetti* certification to be sufficient to support the amount of attorneys' fees being paid in this case, it may find that the attorneys' fees and costs do not taint the fairness of the settlement.

    D.    *Service Fees*.

The Settlement Agreement provides that the following members of the collective action will be paid service fees, as follows:

    $4,000.00 to Kenneth Dyer;

    $1,500.00 to Henry Kemp;

    $1,500.00 to Kirk Sandy;

    $1,000.00 to the Estate of Marquis Grooms;

    $1,000.00 to Roosevelt Duckett, III; and,

    $1,000.00 to Roosevelt Duckett, Jr.

---

[9] The attorneys' fees to be paid under the Settlement Agreement are slightly less than 40% of the total payments to be made by Defendants, exclusive of costs, calculated as follows: ($765,000.00 total payments (Doc. No. 215-1, at 4) - $39,336.76 in costs = $725,663.24) x .40 = $290,265.30.

Doc. No. 215-1, at 5-6. Judges have approved service fees for individuals who perform substantial services for the benefit of the settlement class. *See Signorelli v. Utiliquest, LLC*, Nos. 5:08-cv-38-OC-10GRJ, 5:08-cv-39-OC-10GRJ, 5:08-cv-40-OC-10GRJ, 2008 WL 7825757, at *2 (M.D. Fla. July 25, 2008)(approving service fees in a combined Rule 23 class action and FLSA collective action for individuals "who performed substantial services for the benefit of the Settlement Classes"); *Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012)(and cases cited therein).

In newly submitted evidence, counsel for Plaintiffs avers that Plaintiffs Dyer, Kemp, Grooms and Sandy met with counsel on numerous occasions, responded to interrogatories and reviewed document requests and documents produced by M&M, and were present at both mediations. Adams Decl., Doc. No. 219-2, at 5 ¶¶ 32-35, 40. Plaintiffs Duckett, Jr. and Duckett III also participated in discovery, advised counsel of attempts by a supervisor for M&M to pay Plaintiffs to withdraw from the lawsuit, and took time off from work to meet with counsel. *Id.* at 5 ¶¶ 36-39. Plaintiffs Dyer, Sandy and Kemp also provided declarations regarding their participation in the litigation. Doc. Nos. 219-3 through 219-5. Additionally, counsel attest that the service payments were negotiated separately from the settlement amounts to be paid to Plaintiffs. Adams Decl., Doc. No. 219-2, at 6 ¶¶ 42-43; Beige Decl., Doc. No. 219-1, at 2 ¶¶ 9-10. Based on this new information, and in the absence of objection to the service payments by any Plaintiff, the Court may find that the service payments do not undermine the fairness of the settlement.

## IV. RECOMMENDATIONS.

For the reasons discussed above, I make three alternative recommendations.

First, if the Court finds that the Settlement Agreement, with modifications recommended above, is fair and reasonable and that each Plaintiff has been provided adequate notice of the terms

of the Settlement Agreement and did not object to those terms, I recommend that the Court do the following:

1. **MODIFY** the definition of Defendants and the Plaintiffs' release in the Settlement Agreement as recommended above;

2. **FIND** that the settlement, as modified, is a fair and reasonable resolution of a bona fide dispute under the FLSA;

3. **GRANT in part** the Joint Motion for Approval of FLSA Settlement (Doc. No. 215), without reserving jurisdiction to enforce the settlement;

4. **DISMISS** the case with prejudice; and,

5. **DIRECT** the Clerk of Court to close the file.

Second, if the Court finds that Plaintiffs have not received adequate notice of the Settlement Agreement and an opportunity to object, I recommend that the Court **REQUIRE** notice of the Settlement Agreement to be provided to Plaintiffs in a form approved by the Court and give Plaintiffs time to object to the Settlement Agreement by a date established by the Court.

Third, if the Court finds that any of the terms of the Settlement Agreement undermine the fairness of the settlement, I recommend that the Court **DENY without prejudice** the Joint Motion for Approval of FLSA Settlement (Doc. No. 215) with leave to file, on a date established by the Court, a revised Settlement Agreement and any additional evidence the Court deems necessary to determine whether the settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R.

3-1.

Recommended in Orlando, Florida on May 12, 2017.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

| | Name of Plaintiff | Consent-To-Join | Damages Claimed (with Doc. No. of Answers to Interrogatories) | Settlement Amount |
|---|---|---|---|---|
| 1 | Allen, Joseph | Doc. No. 18-1 | $24,336.00 compensation $24,336.00 liquidated Doc. No. 67-1 | $7,304.34 |
| 2 | Anderson, Robert | Doc. No. 26-1 | $14,397.00 compensation $14,397.00 liquidated Doc. No. 68-1 | $3,151.48 |
| 3 | Bass, Edgar | Doc. No. 21-1 | $22,950.00 compensation $22,950.00 liquidated Doc. No. 70-1 | $2,938.34 |
| 4 | Black, Curtis | Doc. No. 45-1 | $15,963.75 compensation $15,963.75 liquidated Doc. No. 89-1 | $1,968.53 |
| 5 | Bolton, Henry | Doc. No. 94 | $1,728.00 compensation $1,728.00 liquidated Doc. No. 101-1 | $607.94 |
| 6 | Bowers, Corey | Doc. No. 22-1 | $10,530.00 compensation $10,530.00 liquidated Doc. No. 69-1 | $4,444.33 |
| 7 | Brown, LeCory | Doc. No. 172-1 | $29,484.00 compensation $19,484.00 liquidated Doc. No. 183-7 | $4,812.80 |
| 8 | Cain, Courtney | Doc. No. 193-1 | Not stated | $658.59 |
| 9 | Catanese, Anthony T. | Doc. No. 200-1 | Not stated | $3,295.61 |
| 10 | Charles, Ismael Santiago | Doc. No. 198-1 | Not stated | $693.89 |
| 11 | Charlton, Hesley | Doc. No. 188-1 | Not stated | $2,635.16 |
| 12 | Drew, Morris | Doc. No. 25-1 | $4,050.00 compensation $4,050.00 liquidated Doc. No. 71-1 | $2,356.44 |

| 13 | Douglas, Amir | Doc. No. 164-1 | $23,625.00 compensation $23,625.00 liquidated Doc. No. 182-1 | $2,043.19 |
|---|---|---|---|---|
| 14 | Duckett III, Roosevelt | Doc. No. 40-1 | $16,110.00 compensation $16,110.00 liquidated Doc. No. 83-1 | $5,420.73 $1,000.00 service payment Doc. No. 215-1, at 6 |
| 15 | Duckett Jr., Roosevelt | Doc. No. 29-1 | $27,639.00 compensation $27,639.00 liquidated Doc. No. 72-1 | $3,042.33 $1,000.00 service payment Doc. No. 215-1, at 6 |
| 16 | Dyer, Kenneth | Doc. No. 17-1 | $13,126.50 compensation $13,126.50 liquidated Doc. No. 62-1 | $6,481.32 $4,000.00 service payment Doc. No. 215-1, at 5 |
| 17 | Emanuel, Dexter | Doc. No. 49-1 | $12,172.50 compensation $12,172.50 liquidated Doc. No. 91-1 | $2,947.58 |
| 18 | Figueroa, Carlos Candelario | Doc. No. 119-1 | $8,313.75 compensation $8,313.75 liquidated Doc. No. 131-1 | $4,752.97 |
| 19 | Figueroa, Juan G. | Doc. No. 201-1 | Not stated | $2,634.38 |
| 20 | Footman, Clifford | Doc. No. 173-1 | $10,200.00 compensation $10,200.00 liquidated Doc. No. 183-8 | $3,380.12 |
| 21 | Garland, Joshua | Doc. No. 171-1 | $4,224.00 compensation $4,224.00 liquidated Doc. No. 183-5 | $3,149.70 |
| 22 | German, Allen | Doc. No. 206-1 | Not stated | $3,389.58 |
| 23 | Grooms, Marquis (Estate of) | Doc. No. 17-1 | $6,453.00 compensation $6,453.00 liquidated Doc. Nos. 64-1, 65-1 | $6,760.72 $1,000.00 service payment Doc. No. 215-1, at 6 |
| 24 | Hanks, Jermine | Doc. No. 117-1 | $2,250.00 compensation | $1,994.74 |

| | | | $2,250.00 liquidated Doc. No. 130-1 | |
|----|----|----|----|----|
| 25 | Hartz, Stephen | Doc. No. 184-1 | Not stated | $553.23 |
| 26 | Hendrix, William | Doc. No. 197-1 | Not stated | $202.65 |
| 27 | Hill, James | Doc. No. 194-1 | Not stated | $5,560.74 |
| 28 | Hill, Michael | Doc. No. 27-1 | $42,997.00 compensation $42,997.00 liquidated Doc. No. 73-1 | $5,298.00 |
| 29 | Howard, Maurice | Doc. No. 41-1 | $4,356.00 compensation $4,356.00 liquidated Doc. No. 86-1 | $4,901.37 |
| 30 | Jefferson, Walter | Doc. No. 43-1 | $33,930.00 compensation $33,930.00 liquidated Doc. No. 84-1 | $6,980.96 |
| 31 | Jones, Julius | Doc. No. 136-1 | $10,842.00 compensation $10,842.00 liquidated Doc. No. 156-1 | $1,741.23 |
| 32 | Kemp, Henry | Doc. No. 17-1 | $16,762.50 compensation $16,762.50 liquidated Doc. No. 63-1 | $5,674.04 $1,500.00 service payment Doc. No. 215-1, at 5 |
| 33 | Laster, Bruce | Doc. No. 202-1 | Not stated | $3,428.65 |
| 34 | Latimer, Tavaren | Doc. No. 20-1 | $11,745.00 compensation $11,745.00 liquidated Doc. No. 74-1 | $2,460.71 |
| 35 | Leeks, Cedric | Doc. No. 199-1 | Not stated | $3,481.18 |
| 36 | Lewis, Linbell | Doc. No. 186-1 | Not stated | $1,657.72 |
| 37 | Lewis, Theo B. | Doc. No. 58-1 | $13,446.00 compensation $13,446.00 liquidated Doc. No. 93-1 | $1,965.87 |
| 38 | Littles, Jentina | Doc. No. 192-1 | Not stated | $543.10 |

| 39 | Loyer, Ybenson | Doc. No. 196-1 | Not stated | $759.92 |
|----|----------------|----------------|------------|---------|
| 40 | Maldonado, Luis A. | Doc. No. 34-1 | $10,721.25 compensation $10,721.25 liquidated Doc. No. 75-1 | $3,271.64 |
| 41 | Martinez, Jose | Doc. No. 174-1 | $11,880.00 compensation $11,880.00 liquidated Doc. No. 183-6 | $3,025.49 |
| 42 | McCarthy, Willie | Doc. No. 42-1 | $35,040.00 compensation $35,040.00 liquidated Doc. No. 85-1 | $3,949.06 |
| 43 | McFadden, Derrick | Doc. No. 163-1 | $20,280.00 compensation $20, 280.00 liquidated Doc. No. 181-1 | $3,528.09 |
| 44 | McGee, Ricky | Doc. No. 30-1 | $9,945.00 compensation $9,945.00 liquidated Doc. No. 76-1 | $4,135.70 |
| 45 | McGee, William | Doc. No. 205-1 | Not stated | $3,953.30 |
| 46 | Minor, Patrick | Doc. No. 19-1 | $35,100.00 compensation $35,100.00 liquidated Doc. No. 77-1 | $5,061.60 |
| 47 | Morales, Juan Saldana | Doc. No. 185-1 | Not stated | $2,620.21 |
| 48 | O'Neal, Wesley | Doc. No. 48-1 | $7,875.00 compensation $7,875.00 liquidated Doc. No. 90-1 | $2,390.98 |
| 49 | Patrick, Leon | Doc. No. 59-1 | $8,676.00 compensation $8,676.00 liquidated Doc. No. 92-1 | $2,756.92 |
| 50 | Pratt, Bertram | Doc. No. 170-1 | $7,560.00 compensation $7,560.00 liquidated Doc. No. 183-1 | $1,162.67 |
| 51 | Proctor, Edward | Doc. No. 187-1 | Not stated | $1,905.28 |

| 52 | Randall, Fred | Doc. No. 169-1 | $8,964.00 compensation $8,964.00 liquidated Doc. No. 183-2 | $1,957.36 |
|----|---------------|----------------|-----------------------------------------------------------|-----------|
| 53 | Rhoden, Charles | Doc. No. 190-1 | Not stated | $2,128.86 |
| 54 | Richardson, Irving | Doc. No. 195-1 | Not stated | $1,694.13 |
| 55 | Sandy, Kirk | Doc. No. 17-1 | $2,498.40 compensation $2,498.40 liquidated Doc. No. 66-1 | $1,702.21 $1,500.00 service payment Doc. No. 215-1, at 6 |
| 56 | Shakir, Sultan | Doc. No. 191-1 | Not stated | $1,100.37 |
| 57 | Shelby, Roosevelt | Doc. No. 167-1 | $4,725.00 compensation $4,725.00 liquidated Doc. No. 183-3 | $1,046.02 |
| 58 | Sims, Tyrone | Doc. No. 168-1 | $1,657.50 compensation $1,657.50 liquidated Doc. No. 183-4 | $1,795.32 |
| 59 | Smith, Ray | Doc. No. 46-1 | $20,718.75 compensation $20,718.75 liquidated Doc. No. 87-1 | $2,263.12 |
| 60 | Tomlin, Andrew | Doc. No. 31 | $22,797.00 compensation $22,797.00 liquidated Doc. No. 78-1 | $6,995.71 |
| 61 | Walters, Johnny | Doc. No. 23-1 | $7,560.00 compensation $7,560.00 liquidated Doc. No. 79-1 | $2,777.71 |
| 62 | Washington, Calvin | Doc. No. 106-1 | $3,948.75 compensation $3,948.75 liquidated Doc. No. 116-1 | $735.61 |
| 63 | Washington, Joseph | Doc. No. 204-1 | Not stated | $1,560.57 |
| 64 | Watts, Eddie | Doc. No. 33-1 | $46,710.00 compensation $46,710.00 liquidated Doc. No. 80-1 | $4,017.85 |

| 65 | Weaver, Takari | Doc. No. 207-1 | Not stated | $3,345.74 |
|----|----------------|----------------|------------|-----------|
| 66 | Williams, Calvin | Doc. No. 24-1 | $8,280.00 compensation $8,280.00 liquidated Doc. No. 81-1 | $2,361.05 |
| 67 | Williams, Dean | Doc. No. 28-1 | $16,042.50 compensation $16,042.50 liquidated Doc. No. 82-1 | $2,582.96 |
| 68 | Williams, James | Doc. No. 47-1 | $13,797.00 compensation $13,797.00 liquidated Doc. No. 88-1 | $3,100.46 |